UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 20-4451-MWF (MRWx)    JS-6    **Date:**  February 2, 2022
Title:   Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:
Rita Sanchez

Court Reporter:
Not Reported

Attorneys Present for Plaintiff:
None Present

Attorneys Present for Defendant:
None Present

**Proceedings (In Chambers):**    ORDER GRANTING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT [138]

Before the Court is Defendants-Respondents Felicia L. Ponce, in her official capacity as Warden of FCI Terminal Island (the "Warden"), and Michael Carvajal, in his official capacity as Director of the Bureau of Prisons, Motion for Summary Judgment (the "Motion"), filed on July 26, 2021.  (Docket No. 138).  Plaintiff-Petitioners Lance Wilson, Maurice Smith, and Edgar Vasquez's filed an Opposition on August 9, 2021.  (Docket No. 141).  Respondents filed a Reply on August 16, 2021.  (Docket No. 157).

The Court has read and considered the papers filed in connection with the Motion and held a telephonic hearing on **January 31, 2022**, pursuant to General Order 21-08 and Order of the Chief Judge 21-124 arising from the COVID-19 pandemic.

For the reasons set forth below, the Motion is **GRANTED**.  Petitioners fail to raise a triable issue of fact regarding an objectively, sufficiently serious deprivation.  The safety measures instituted by FCI Terminal Island and the historical data of low infection rates overrides any claim that Petitioners are being subjected to a risk that today's society would not tolerate.  Additionally, Petitioners fail to raise a triable issue of fact regarding Respondents' deliberate indifference to the risk of COVID-19.

As everyone at the hearing realized, this Motion seemed artificial.  The current situation presumably reflects the Omicron variant, as Petitioners' counsel represented

---
**CIVIL MINUTES—GENERAL**                                                                1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-4451-MWF (MRWx)   JS-6   Date:  February 2, 2022
Title:      Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

at the hearing, no doubt accurately.  Petitioners' counsel essentially asked for the chance to reopen discovery and oppose summary judgment based on current circumstances.  This Court declines that invitation, based both on the law and its own discretion.

I.   **BACKGROUND**

The factual background of this case is set forth in the Court's Amended Order Denying Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction dated June 10, 2020 (the "June 2020 Order").  (Docket No. 41).  The Court incorporates by reference the factual background contained in the June 2020 Order and provides additional facts as necessary below.

On May 11, 2020, more than 700 people at Federal Correctional Institution ("FCI") Terminal Island tested positive for COVID-19.  (Petitioners' Additional Uncontroverted Facts ("PAUF") ¶ 4 (Docket No. 157-1)).  Five days later, Petitioners filed this action on behalf of people at FCI Terminal Island, challenging Respondents' response to the COVID-19 pandemic.  (Complaint (Docket No. 1)).  The Complaint asserted two causes of action: (1) a habeas claim challenging the constitutionality of confinement; and (2) a claim for injunctive relief challenging conditions of confinement pursuant to the Eighth Amendment.  (*Id*.).  The Court subsequently dismissed the habeas claim (Docket No. 91), so Petitioners' Eighth Amendment claim is all that remains.

At the beginning of this litigation, the Court appointed a medical expert, Dr. Michael Rowe, to inspect the status of FCI Terminal Island's COVID-19 response and its ongoing risk management.  (*See* FRE 706 Report (Docket No. 74)).  The report was completed on August 24, 2020.  (*Id*.).  Dr. Rowe observed, among other things, that the general population could be at risk of future infections because FCI Terminal Island only tested symptomatic individuals and their close contacts (contact tracing) rather than conducting wide-scale tests on a random basis (surveillance testing).  (*Id*. at 40).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-4451-MWF (MRWx)   JS-6   **Date:** February 2, 2022
**Title:**   Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

On August 31, 2020, *after* Dr. Rowe's inspection, the Bureau of Prisons ("BOP") released its COVID-19 Pandemic Response Plan that compiled previous guidance, including all phases of its Action Plan, and provided a comprehensive document with specific guidance for limiting the spread of COVID- 19 at BOP institutions. (Respondents' Statement of Uncontroverted Facts ("UF") ¶ 2 (Docket No. 138-1)).

Although Petitioners dispute the consistency of the implemented safety measures, the COVID-19 Pandemic Response Plan can be generally described as a robust system of contact tracing. The Plan requires that symptomatic inmates be isolated and tested expeditiously and asymptomatic inmates with known or suspected contact with a COVID-19 case be quarantined and tested expeditiously. (UF ¶ 23). The Plan further states that expanded testing of all inmates in an entire open bay housing unit should be considered as part of a robust contact tracing. (UF ¶ 24).

Respondents expanded testing protocols even further by requiring all incoming and outgoing inmates to be tested. (UF ¶ 25). As part of intake procedures, the inmates who test positive are isolated while those testing negative enter a 14-day quarantine. (UF ¶ 29). The incoming inmates are only transferred into the institution's general population if they either clear quarantine by having a repeated negative test result or, if positive, after completing the isolation period and being cleared by medical staff. (UF ¶ 30).

Petitioners, however, dispute the effectiveness of using contact tracing to test inmates. On January 2, 2021, Petitioners filed a motion for a preliminary injunction that would require respondents to implement surveillance testing in addition to the contact tracing regiment already in place. (Docket No. 92). The Court denied Petitioners' request, explaining that "the parties' disagreement with respect to testing amounts to a difference of medical opinion — and that both opinions are reasonable." (Order Denying Motion for Preliminary Injunction (Docket No. 109) at 7) (citing *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) ("[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.")).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-4451-MWF (MRWx)    JS-6    **Date:** February 2, 2022
**Title:**    Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

The effectiveness of the Pandemic Response Plan's contact tracing can be measured numerically. As of July 26, 2021, FCI Terminal Island conducted over 2,704 COVID-19 tests on 705 inmates at Terminal Island, and this number does not include testing that was conducted at outside facilities. (UF ¶ 32). From January 2021 through July 19, 2021, FCI Terminal Island did not have a single lab confirmed COVID-19 case in its general population. (UF ¶ 35). Moreover, FCI Terminal Island has not had an inmate hospitalized for COVID-related illness since August 20, 2020. (UF ¶ 34).

The Pandemic Response Plan's success was aided by the widespread availability of COVID-19 vaccines. Starting in December 2020, FCI Terminal Island offered vaccines to staff and inmates on a priority system correlated to the supply of vaccines available. (UF ¶¶ 56–59). By April 20, 2021, FCI Terminal Island had offered the vaccine to all inmates (though one class member claims he was not "offered" the vaccine). (UF ¶ 64; Decl. of Maurice Smith ¶ 8). As of May 2021, FCI Terminal Island can order vaccine doses as needed through an on-demand system that provides doses within 24 hours. (UF ¶ 67).

Moreover, Respondents do more than simply offer the vaccine to inmates. Through educational engagement efforts, Respondents encourage inmates to become vaccinated. (UF ¶ 68). Petitioners dispute whether individualized education sessions are offered, but it is undisputed that Respondents (1) posted educational flyers throughout the facility in both English and Spanish; (2) posted vaccine information on FCI Terminal Island's computer system used by inmates; (3) held town hall meetings about the vaccine; and (4) instituted a 24-hour period where the only program inmates could watch on televisions was a vaccine educational video broadcast throughout the institution. (*Id*.). Moreover, FCI Terminal Island has created a form that inmates may fill out to ask questions about the vaccine or to request the vaccine. (UF ¶ 71). The form goes directly to FCI Terminal Island's Infectious Disease Nurses for follow up. (*Id*.).

As a result of these engagement efforts, approximately 53 inmates have reconsidered their prior vaccine refusals and have been vaccinated. (UF ¶ 72). Of the 705 inmates housed at FCI Terminal Island as of July 26, 2021, 563 (i.e., 80.1%) have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-4451-MWF (MRWx)   JS-6   **Date:** February 2, 2022
**Title:**   Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

either received at least one dose of a COVID-19 vaccine, have recovered from COVID-19 per CDC Guidelines, or both.  (UF ¶ 75).

On September 9, 2021, after the Motion was briefed by both parties, the President issued an executive order that requires all federal employees to receive COVID-19 vaccinations.  Exec. Order No. 14,043, 86 Fed. Reg. 50,989 (Sept. 9, 2021).  Accordingly, the staff members at FCI Terminal Island are now subject to a vaccination mandate.

## II.   LEGAL STANDARD

In deciding a motion for summary judgment under Rule 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-4451-MWF (MRWx)   JS-6   **Date:** February 2, 2022
**Title:**   Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). "A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249-50.

### III.   DISCUSSION

A prison official violates the Eighth Amendment only when two requirements are met: (1) the alleged deprivation is "objectively, 'sufficiently serious,'" "result[ing] in the denial of the 'minimal civilized measure of life's necessities'"; and (2) the prison official acts with a "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834.

"[T]o survive summary judgment, [Petitioners] must come forward with evidence from which it can be inferred that [Respondents] were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Id*. at 846.  In other words, Petitioners must raise a triable issue of fact as to the current conditions at FCI Terminal Island.

### A.   An Objectively, Sufficiently Serious Deprivation

An objectively, sufficiently serious deprivation is one that denies Petitioners the minimal civilized measure of life's necessities. *Id*. at 834.  When determining whether a deprivation qualifies as an Eighth Amendment violation, the Court must do more than a scientific and statistical inquiry into the seriousness of the potential harm and likelihood of injury – "it also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-4451-MWF (MRWx)   JS-6   **Date:** February 2, 2022
**Title:**   Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

*McKinney*, 509 U.S. 25, 36 (1993).  "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*.

Petitioners allege that Respondents' ongoing COVID-19 response unreasonably exposes Petitioners to a risk of COVID-19 infection, which is an objectively, sufficiently serious deprivation – and thus by definition, is a risk that today's society would not tolerate.  But in the midst of a global pandemic, measuring society's risk tolerances can be a difficult task.  Some individuals may limit their exposure to the public and strictly enforce the use of personal protective equipment ("PPE") to reduce risks of infection, whereas other individuals may continue to congregate in public and wear the minimal amount of PPE required by law.  Some individuals may excitedly line up to receive their COVID-19 vaccination, whereas other individuals may refuse to be vaccinated and protest any mandate that would require a vaccination.

One way to determine whether Petitioners' alleged deprivation amounts to an intolerable risk is to analyze historical data that compares society's infection rates to infection rates within FCI Terminal Island.  If infection rates are substantially higher within FCI Terminal Island, the Court could reasonably conclude that Petitioners are being exposed to a risk that today's society would not tolerate.  *See Hines v. Youssef*, 2015 WL 164215, at *4 (E.D. Cal. Jan. 13, 2015) ("Unless there is something about a prisoner's conditions of confinement that raises the risk of exposure substantially above the risk experienced by the surrounding communities, it cannot be reasoned that the prisoner is involuntarily exposed to a risk the society would not tolerate.").

Here, the historical data favors Respondents.  The wave of infections from spring 2020 led to the only COVID-related deaths within FCI Terminal Island, numbering 10 total – or a death rate of 1.43% (10 deaths for 697 inmate cases).  This rate is less than the Los Angeles County death rate of 1.89% (24,594 deaths for 1,273,390 cases).  (Motion at 16).  FCI Terminal Island has had no COVID-hospitalizations since May 2020, compared to thousands of COVID-hospitalizations in surrounding areas.  (*Id*.).  In fact, from January 2021 through July 19, 2021, FCI Terminal Island did not have a single lab confirmed COVID-19 case in its general

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-4451-MWF (MRWx)   JS-6   **Date:** February 2, 2022
**Title:**   Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

population. (UF ¶ 35). Based on the data, it is reasonable to conclude that Petitioners are actually *less* likely to contract COVID-19 when compared to the rest of society, which could be a function of population control because a prison can assert control over its inmates in ways that society cannot assert control over its residents.

Petitioners rebut this conclusion by arguing that the data is skewed because inmates are discouraged from reporting their symptoms (Opp. at 6), but Petitioners' speculations are contradicted by data that shows there have been zero COVID-hospitalizations within FCI Terminal Island since May 2020.

The additional fact issues raised by Petitioners fare no better. Petitioners argue that staff have been permitted to work while symptomatic, which unreasonably endangers the inmate population. (Opp. at 11). But to support this assertion, Petitioners cite Dr. Rowe's report that was submitted before the BOP issued its COVID-19 Pandemic Response Plan. (*Id*.)

The Response Plan clearly does not permit staff to work while experiencing symptoms. (*See* COVID-19 Pandemic Response Plan Module 11. D (Docket No. 138-2)). And an entire module of the plan is dedicated to assisting staff members when they navigate their return to work. (*Id*.). Petitioners further debate the sufficiency of mandated staff testing requirements, but Petitioners fail to argue that a lack of mandated testing creates an unreasonable risk that society would not tolerate. Moreover, the vaccine mandate for all staff at FCI Terminal Island further supports the Court's conclusion that Petitioners are not being exposed to unreasonable risks.

Petitioners also argue that inmates are receiving substandard medical care, which increases a risk of future outbreaks. (Opp. at 12). Petitioners' speculations, supported by declarations from inmates who are not medical professionals, fails to defeat the historical data described above.

Lastly, Petitioners argue that large amounts of individuals remain unvaccinated due to FCI Terminal Island's inadequate vaccination efforts. (Opp. at 14). First, any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-4451-MWF (MRWx)    JS-6    **Date:** February 2, 2022
**Title:**    Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

argument related to staff vaccination rates is now moot considering the federal employee vaccine mandate. Second, Petitioners' own refusal to receive the vaccine cannot serve as the basis for injunctive relief. As one court has explained:

> [T]he vaccine must smother all attempts by prisoners or pre-trial detainees to request COVID-19-related relief based upon the theory that the risk of infection violates the constitution; persons in custody who refuse the vaccine are now imperiled solely as a result of their own free will and not because a detention center allegedly offended the Fifth, Eighth, and Fourteenth Amendments by failing to sufficiently implement prophylactic measures.

*Martinez v. CoreCivic*, No. CV 20-1309 WJ/CG, 2021 WL 2550319, at *8 (D.N.M. June 22, 2021) (collecting cases).

Accordingly, the Motion is **GRANTED**. Petitioners fail to raise a triable issue of fact regarding an objectively, sufficiently serious deprivation. The safety measures instituted by FCI Terminal Island and the historical data of low infection rates overrides any claim that Petitioners are being subjected to a risk that today's society would not tolerate.

**B.   Deliberate Indifference to Inmate Health or Safety**

Although the Court grants the Motion because Petitioners fail to raise a fact issue regarding an objectively, sufficiently serious deprivation, the Court chooses to address the deliberate indifference prong of the analysis as well.

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." *Farmer*, 511 U.S. at 837. Deliberate indifference is even more egregious than gross negligence because it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-4451-MWF (MRWx)   JS-6   **Date:** February 2, 2022
**Title:**   Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

requires a culpable mental state. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).

To find deliberate indifference, "the state actor must recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id*. (internal quotation omitted). "In other words, the defendant knows that something is going to happen but ignores the risk and exposes the plaintiff to it." *Id*. (internal quotation omitted). If no rational factfinder could find that Respondents acted with this requisite mental state, the issue is appropriate for summary judgment. *Id*.

Petitioners claim that Respondents continue to act with deliberate indifference because they fail to implement basic safety measures regarding testing, medical care, and vaccine education. (Opp. at 20). However, Petitioners' allegations do not rise to the level of deliberate indifference.

As described above, Respondents have implemented various measures regarding testing, medical care, and vaccine education. And so long as Respondents have responded reasonably to the threat of COVID-19, they will not be subject to liability for deliberate indifference, even if the harm was ultimately not averted. *Farmer*, 511 U.S. at 844. Put simply, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id*. at 845.

When it comes to testing, the Court has already determined that Respondents' methods are reasonable. (*See* Order Denying Motion for Preliminary Injunction). Petitioners' request to implement surveillance testing in addition to contact tracing testing amounts to a mere difference of reasonable medical opinions, which cannot establish deliberate indifference as a matter of law. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[A] mere 'difference of medical opinion … [is] insufficient, as a matter of law, to establish deliberate indifference.'") (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-4451-MWF (MRWx)   JS-6   **Date:** February 2, 2022
**Title:**   Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

As to the medical care provided, Petitioners again cite to Dr. Rowe's report, which as noted was completed before FCI Terminal Island implemented the COVID-19 Pandemic Response Plan. Petitioners also rely upon the declarations of inmates to rebut the conclusions of Respondents' experts instead of rebutting the claims with expert testimony of their own. As discussed below, this is surprising given Petitioners use of expert testimony to support their Complaint and Motion for Preliminary Injunction on Testing.

Regardless, Petitioners are seeking relief because FCI Terminal Island is allegedly not protecting inmates from COVID-19 – not medical care in general. Petitioners fail to raise a fact issue regarding medical care that involves ***deliberate indifference*** to the threat or treatment of COVID-19.

Petitioners' arguments related to vaccine education similarly fail to meet the deliberate indifference standard. Respondents' alleged failure to counsel inmates individually, even if true, does not amount to deliberate indifference because Respondents have (1) posted educational flyers throughout the facility in both English and Spanish; (2) posted vaccine information on FCI Terminal Island's computer system used by inmates; (3) held town hall meetings about the vaccine; and (4) instituted a 24-hour period where the only program inmates could watch on televisions was a vaccine educational video broadcast throughout the institution. Additionally, inmates have access to an online form where they can ask the medical staff questions about the vaccine or request to receive the vaccine. Petitioners' strained argument that inadequate medical care, in general, has caused Petitioners to become "fearful to receive the vaccine from staff they distrust" is a subjective fear that may be held by inmates – not a subjective disregard of unreasonable risk by Respondents. (Opp. at 14).

Accordingly, the Motion is **GRANTED** for the independent reason that Petitioners fail to raise a triable fact issue regarding Respondents' deliberate indifference to the threat or treatment of COVID-19.

---

**CIVIL MINUTES—GENERAL**                                                              11

Ex. B, Page 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-4451-MWF (MRWx)    JS-6    Date:  February 2, 2022
Title:     Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

### C.  Petitioners' Declarations and Respondents' Evidentiary Objections

When considering a motion for summary judgment, the Court views the evidence in a light most favorable to the non-moving party – in this case, a light most favorable to Petitioners.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (acknowledging that on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor.").  However, the Court will not consider Petitioners' evidence to the extent it is inadmissible.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *See also S.E.C. v. Phan*, 500 F.3d 895, 913 (9th Cir. 2007) (applying same).

To support its Motion, Respondents offer two experts to opine on the sufficiency of FCI Terminal Island's COVID-19 Pandemic Response Plan.  (Docket Nos. 138-4, 138-5).  Petitioners, however, offer none.  Instead, Petitioners attempt to manufacture factual disputes with declarations from inmates that are replete with admissibility issues.  (Docket Nos. 142–52).

Petitioners' strategy is problematic for multiple reasons:

*First*, it is a reversal from Petitioners' previous position that expert testimony is required to assess whether Petitioners are receiving adequate medical care and protection from the COVID-19 pandemic.  At the outset of this case, Petitioners requested a site visit by a medical expert because "[the] action is brought due to an infectious disease and asserts constitutional violations due to poor health and sanitation conditions and inadequate medical care.  ***An 'inspector' without such expertise would not have the foundation to report on these facts***."  (Joint Statement on Proposed Briefing Schedule and Expedited Discovery (Docket No. 46) at 8) (emphasis added).

---

**CIVIL MINUTES—GENERAL**                                                          12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**   CV 20-4451-MWF (MRWx)   JS-6   **Date:**   February 2, 2022
**Title:**   Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

Therefore, Petitioners' own admission belies the notion that inmates at FCI Terminal Island have the foundation to report whether they are being adequately protected from the risks of COVID-19. As Respondents point out, Petitioners' failure to offer expert testimony in this case could be an independent basis for granting summary judgment. Whether the current conditions of confinement at FCI Terminal Island create an objectively, unreasonable risk from a COVID-19 infection is not a matter of common knowledge to be decided by a layperson. (Reply at 5) (citing *Robinson v. United States*, 462 F. App'x 885, 887 (11th Cir. 2012)) ("Given that [plaintiff] did not present any expert medical evidence to contradict the government's expert medical evidence, the district court properly granted summary judgment to the government[.]").

***Second***, Petitioners' decision to forego engaging an expert is questionable in the context of this action. For Petitioners to survive this Motion, they must identify a triable issue of fact as to the ***current*** COVID-19 risks at FCI Terminal Island. But instead of utilizing an expert to explain Respondents' present shortcomings, Petitioners' Opposition relies on the court-appointed expert's initial report, which was published ***before*** FCI Terminal Island instituted its COVID-19 Pandemic Response Plan. Here, it is critical that the current COVID-19 risks at FCI Terminal Island are assessed after Respondents instituted their response plan.

***Lastly***, Petitioners submit nine declarations from inmates who were not specifically disclosed in Petitioners' Rule 26 Initial Disclosures or in their interrogatories as persons having knowledge of facts relevant to this case. (Respondents' Evidentiary Objections (Docket No. 157-2)). Failing to name the inmate-declarants deprived Respondents of their opportunity to depose the inmates and test the sufficiency of their allegations. *See also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 20-4451-MWF (MRWx)   JS-6   **Date:**  February 2, 2022
**Title:**   Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

    Even though Respondents had only seven days to craft their Reply, they allege that an initial investigation reveals that many of the inmates' allegations are demonstrably false. (Reply at 5). For example, one declarant's allegation that medical appointments are "nearly impossible to obtain" is contradicted by his four documented encounters with medical staff in the first half of 2021 alone. (Decl. of Claud Koerber ¶ 7 (Docket No. 144)). The declarations provided are also plagued by admissibility issues, such as hearsay. The declarations repeatedly allege damaging statements that were made by unnamed and unknown declarants. For example, one declarant states, "I heard one officer say that he wanted to get COVID because he would be able to take 30 days of paid leave." (Decl. of Christopher Miller ¶ 9 (Docket No. 143)). (*See e.g.*, Decl. of Edgar Vasquez ¶ 6 (Docket No. 147)) ("One of my friends reported having COVID symptoms early one morning but was blown off until late in the afternoon."); (Decl. of Leonard Leseman ¶ 11 (Docket No. 149)) ("I have also heard many people being actively discouraged from getting the vaccine by the COs, many of whom are not vaccinated themselves.").

    The declarants also opine on medical conclusions that would be more appropriately addressed by expert testimony. As one declarant states, "I believe the current outbreak was preventable and happened again due to Terminal Island's ongoing callous disregard for our lives and safety." (Decl. of Maurice Smith ¶ 7 (Docket No. 151)). (*See e.g.*, Decl. of Charles Butcher ¶ 6 (Docket No. 142)) ("I believe the lack of testing is a significant problem here, and it's why there's currently an outbreak at this prison."); (Decl. of Marcus Tsingine ¶ 9 (Docket No. 150)) ("I also think I'm a COVID long-hauler. In my understanding, a COVID long-hauler is someone who experiences symptoms of COVID-19 long after they were initially infected.").

    Although the Court grants the Motion for a failure to meet the Eighth Amendment claim requirements as discussed above, Petitioners' failure to engage an expert to assess the current conditions of FCI Terminal Island's COVID-19 response serves as an independent basis to grant the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-4451-MWF (MRWx)   JS-6 | Date: | February 2, 2022 |
| Title: | Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al. | | |

### D. This Action must Come to a Close

At the hearing, Petitioners' counsel informed the Court that FCI Terminal Island was in the process of combating an ongoing COVID outbreak – most likely from the Omicron variant of the disease, which has quickly spread throughout Los Angeles County. Petitioners' counsel also acknowledged that the unpredictability of the virus has made it difficult to track the "current" conditions faced by inmates, yet Plaintiffs are willing to send an expert to the facility if the Court would like more current information. Viewed formally, counsel for Petitioners requested an amendment to the scheduling order to reopen discovery (Fed. R. Civ. P. 16) combined with the opportunity to expand the record to stave off summary judgment (Fed. R. Civ. P. 56(d)). Not so subtly, what Petitioners really want is for this Court to keep this action on life support to prod the Warden to continue to take the pandemic seriously.

The Court understands and respects the motivation of counsel, but the time has come to end this litigation. The current situation, happily, is far from the literally mortal situation that existed in the spring of 2020. As to the formal request, it is does not meet the requirements of either Rule 16 or Rule 56(d). As to the true request, the Court must, consistent with separation of powers, defer to the Executive Branch's decisions on how a prison should be run.

### IV. CONCLUSION

The Motion is **GRANTED** and the action is **DISMISSED**.

IT IS SO ORDERED.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this order, and its entry on the docket, as an entry of judgment.